The judgment of the court was pronounced by
Preston, J.
The plaintiff sues the defendant for two slaves named Willis and Mary. The defendant, having given his note for the price of the slaves, which remains unpaid, though due, is indifferent as to the result of the suit, but called John Gamble, his vendor, in warranty, who defends the suit.
The intervenors allege, that Gamble sold the slaves to the defendant for his note of $1250, which has been transferred by Gamble to them, insist on the validity of the defendant’s title, in order that they may be paid with the privilege of vendor upon the slaves, they being in the possession of the vendee. The intervenors were interrogated upon oath, and showed so little interest in the note, that a verdict was very properly rendered against them. They had been paid by Gamble all but a small balance, and for that looked to him for payment.
The whole controversy, therefore, is between the plaintiff and Gamble, the warrantor of the defendant. In January, 1846, the plaintiff sold to Gamble the two slaves in controversy, with thirteen others. The consideration for the whole was Gamble’s three notes, for $1716 66§- each, payable respectively on the 1st of January, 1847, 1848 and 1849 : amounting in the aggregate, to $5150.
The court has no doubt, from a careful examination of the pleadings, documents and evidence in the case, that this sale was simulated. The testimony of Story, received without objection, establishes the simulation. The slaves, moreover, remained in the possession of the vendor. And he sold, or had already sold, (the evidence does not show clearly -which,) the two slaves in controversy to Archibald Yeizer. These two slaves were claimed from Yeizer, who testifies that he compromised with Gamble for Bass, and transferred the bill of sale to Bass and delivered it to Gamble, representing himself as the agent of Bass, to be delivered to Bass. He received a draft of Gamble for $125, which was paid, and gave up two notes of Bass, for $1000 each, which had been given to him for land in the State of Mississippi. He says Gamble wished the witness to transfer the slaves to him, but he peremptorily refused to do so. All the transaction was for the benefit of Mr. Bass, Mr. Gamble representing himself as the agent and friend of IkZr. Bass. Gamble thus obtained the two slaves; hired them to the defendant, Balph; and, on the 8th of *236 March, 1847, sold them to him for $1250, on his note payable the following January.
In March, 1847, Gamble took possession of all the other slaves clandestinely; whereupon Bass sued him for the amount of the notes given for the whole, and prosecuted him for larceny, in taking clandestine possession of the slaves; proceedings perhaps inconsistent with each other.
A settlement of their controversies was then proposed, and made; in which the plaintiff complains that he was overreached, it having been in some degree forced upon him by Gamble, he having the assistance of his counsel, while he, Bass, was unexpectedly deprived of the benefit of counsel, was entirely unacquainted with business, and did not know what he signed.
The criminal prosecution was abandoned in a letter of Bass to the justice of the peace, acknowledging his error; and in which he states, that Gamble had acted as he had a right to do with his own property.
The settlement of their civil controversy is evidenced by the following receipt;
$5150. Richmond, May 22d, 1847.
Received of Dr. John Gamble, five thousand one hundred and fifty dollars, in payment and full satisfaction of his three certain promissory notes, all dated January 3d, 1846, each for the sum of one thousand seven hundred and sixteen dollars and sixty six and two-thirds cents, due January 1st, 1847, 1848 and 1849, being the same notes on which I have instituted suit against the said John Gamble, and have held him to bail; and Allen Peirse, Esq., my attorney in said suit, is hereby requested and directed to cause the said suit to be dismissed at my costs, and to deliver the said notes to Dr. Gamble, his agent or attorney; and I hereby declare and acknowledge the above payment to be satisfaction in full of all my accounts and demands whatsoever against the said John Gamble. Witness, (Signed,) R. C. Downs. (Signed,) John Bass.
We decided in the case of Fletcher v. Fletcher, that the consideration of a receipt may be explained by testimony. Two of the notes were not due; the first had not been paid when it became due. It is highly improbable that all three were paid together in money before the two last became due. Mr. Downs, who was witness to the receipt, does not say any money was paid, much less so large a sum. On the contrary, he proves that when the receipts were passed he understood that Gamble was to give Bass some real estate; does not know how much, or what it was, and that Bass expressed himself satisfied with any paper that witness might draw, that would bring about evidence of a settlement. Mr. Peirse, the counsel of Bass, says the notes were given up in conformity with a letter received from John Bass, and that Gamble told witness that he was to make a donation of the negroes to Mrs. Bass. The testimony of these gentlemen was received without objection, and with the testimony we have detailed, and other circumstantial evidence, induced the juxy to render the following verdict, with which the district court was satisfied : “'We, of the juxy, find a verdict dismissing the suit of the intervenors, and cancelling the note of Mr. Balph, and restoring the two negroes sued for to John Bass.” The juxy probably concluded that the real payment or consideration for the receipt and return of the notes given for the slaves, was the abandonment by Gamble of his claim to at least the two slaves in controversy.
We yield to their conclusion, as it was the duty of both parties to annul unreal titles to either negroes or money, that their writings might be the evidence only of real transactions.
*237 The testimony of the witness Yeizer was objected to as contradicting the act of sale of the slaves from Bass to Gamble. The act of sale did not declare that the slaves had been delivered to Gamble, which, under article 2454 of the Civil Code would have been conclusive as to the delivery. It did not, therefore, contradict the act. The testimony was admitted to show that Gamble, in the compromise with Yeizer, did not act as the principal, but as the agent of Bass, and received the slaves for the latter, and not for himself. It tended to render more probable to the jury the abandonment by Gamble of his claim to the two slaves in controversy, on receiving back the notes given for them, because he was in possession of them, not for himself, but for Bass.
We are of opinion, that the verdict and judgment does justice to all the parties, and that no principle of law has been violated in obtaining them. The judgment of the district court is there affirmed, with costs.